**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Demetrio Santiago, | No. CV-23-01511-PHX-KML |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Construction Cleaning Pros AZ LLC, Karl Lautz, and Unknown Lautz, | |
| Defendants. | |

Plaintiff Demetrio Santiago performed construction cleaning work for defendant Construction Cleaning Pros AZ, LLC and its owners, defendants Karl and Lisa M. Lautz (collectively "CCP"). Santiago claims CCP failed to pay wages owed to him under the Fair Labor Standards Act (FLSA), the Arizona Minimum Wage Act (AMWA), and the Arizona Wage Act (AWA).

Santiago moved for partial summary judgment on one ground: that he was an employee, not an independent contractor, under the FLSA. The court agrees and his motion is granted.

**I.      Background**

The following facts are presented in the light most favorable to CCP.[1] CCP is an

---

[1] CCP argues summary judgment cannot be granted because Santiago failed to provide a separate statement of facts as L.R. Civ. P. 56.1(a) requires. (Doc. 31 at 2.) But as Santiago points out, this court's standard case management order suspends L.R. Civ. P. 56.1(a). *See* https://www.azd.uscourts.gov/sites/azd/files/judge-orders/KML%20Case%20Management%20Order.pdf. And although the standard case management order did not issue in this transfer case, Santiago's motion makes clear the issue on which he is seeking judgment and provides citations to the relevant factual support. CCP does not explain how a statement of facts, even if required, would have

Arizona construction cleaning business. (Doc. 30-2 at 5.) Santiago worked as a cleaner for CCP between May and June 2023. (Doc. 30-3 at 3.) CCP would text Santiago to offer work for the day and Santiago could accept or decline. (Doc. 30-4 at 4.) On at least one occasion, Santiago declined to work for CCP because he "had other work." (Doc. 30-4 at 4.)

On the days Santiago worked for CCP, CCP would "drop[ Santiago off] at a job site with cleaning supplies" (Doc. 31 at 6) and would "periodically stop at project sites to check in" on his progress (Doc. 31-1 at 2). CCP "routinely" stopped by the project site during Santiago's lunch break. (Doc. 31-1 at 2.) Santiago told CCP the work he had performed and CCP then inspected it. (Doc. 30-4 at 4; Doc. 30-6 at 4.) If Santiago's work was not to CCP's standards, CCP required him to re-do it. (Doc. 30-4 at 4; Doc. 30-6 at 4.)

The parties agreed Santiago would be paid $150 per day in cash. (Doc. 30-4 at 2.) Santiago asked to be paid daily, and generally CCP did so after the work was "satisfactorily completed on that day." (Doc. 30-4 at 2.) But sometimes CCP did not pay Santiago if it determined his work was inadequate or if CCP itself was not paid until after the "overall project" was completed. (Doc. 30-4 at 2; Doc. 30-8 at 7.)

The last week Santiago worked for CCP, CCP refused to pay him because it felt his work was not satisfactorily completed. (Doc. 30-8 at 7.) Santiago then brought this complaint alleging CCP's failures to pay him violated the FLSA, AMWA, and AWA. (Doc. 1 at 1.) After the parties conducted discovery, Santiago moved for partial summary judgment claiming CCP misclassified him as an independent contractor and he was instead an employee under the FLSA. (Doc. 30 at 1.)[2] In response, CCP argued there is a dispute of fact as to whether Santiago was an employee and also claimed CCP is not "covered by the FLSA." (Doc. 31 at 1–2.) It failed to move for summary judgment on the

---

made a material difference to its opposition and was not prejudiced by its absence.
[2] Santiago's motion (Doc. 30), reply (Doc. 32), and table of contents for motion exhibits (Doc. 30-1) do not have ECF-generated headers. Citations are to their internal paginations.

1  FLSA coverage ground itself, though, and the court therefore declines to consider that
2  argument.³ Because there is no genuine dispute as to any material fact regarding
3  Santiago's employee status and CCP's argument is not properly raised in *response* to a
4  motion for summary judgment, Santiago's motion is granted.

## II.     Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (quoting *First Nat. Bank of Ariz. v. Cities Serv.*

---

³ CCP argues the FLSA does not apply because it never made more than $500,000. (Doc. 31 at 4 (citing 29 U.S.C. § 203(s)(1)(A)(ii).) Generating revenue of more than $500,000 represents only one way the FLSA may apply. *See* 29 U.S.C. § 207(a)(1) (FLSA also provides individual coverage to employees "engaged in commerce or the production of goods for commerce"). In any event, CCP should have filed its own motion for summary judgment if it wanted a ruling on whether the FLSA's $500,000 revenue provision applied. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc*., 484 U.S. 49, 66 (1987) (finding defendants "should have moved for summary judgment" on threshold issue and "the case proceeds to trial on the merits" because they failed to do so). The Ninth Circuit has warned "great care must be exercised" when a court is considering whether to grant summary judgment on an issue not raised in a procedurally-proper manner. *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714 (9th Cir. 2020). Accordingly, both because CCP raised the issue in a procedurally-improper way and its argument would not fully dispose of the claim even if considered, the court declines to address the argument now. Santiago will ultimately bear the burden of proving FLSA coverage at trial.

*Co.*, 391 U.S. 253, 289 (1968)).

### III. Employee Status

Determining whether an individual qualifies as an employee or an independent contractor depends upon "[e]conomic realities, not contractual labels." *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979). Although CCP called Santiago an independent contractor, that labeling is immaterial. The "subjective intent of the parties to a labor contract" cannot override the ultimate "economic realities." *Id*.

The Ninth Circuit has identified factors distinguishing employees from independent contractors, including: (1) the degree of the employer's right to control the manner in which the work is performed; (2) the employee's opportunity for profit or loss depending upon his managerial skill; (3) the employee's investment in equipment or materials required for his task, or employment of helpers; (4) whether the employee's services require special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business. *Id.* at 754. Although *Driscoll*'s list is not exhaustive, it provides a useful framework for evaluating the parties' relationship. *See id.* ("The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends 'upon the circumstances of the whole activity.'") (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, (1947)); *see also Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981). Based on the *Driscoll* factors and all other circumstances, Santiago was an employee.

#### a. Right to Control

The first *Driscoll* factor evaluates the employer's right to control the manner in which an employee worked. *Driscoll*, 603 F.2d at 754. "The extent of the employer's right to control the means and manner of the worker's performance is a primary factor." *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 884 (9th Cir. 1980).

CCP alleges it "rarely, if ever, directed, instructed, supervised or controlled the manner or means in which [Santiago] performed construction cleaning services"

(Doc. 31-1 at 3), but admits it determined the location and scope of Santiago's work (Doc. 30-4 at 4), set standards for his work (Doc. 30-6 at 4), "periodically stop[ped] at project sites to check in" on Santiago's progress and "routinely" stopped by project sites during Santiago's lunch break (Doc. 31-1 at 2), received reports of the work Santiago completed, inspected his work on completion, and required Santiago to re-do his work if it was not to CCP's standards. (Doc. 30-4 at 4; Doc. 30-6 at 4.)

"The right to control does not require continuous monitoring of employees." *Eans v. Lund*, No. CV-22-01532-PHX-DLR, 2023 WL 7327985, at *3 (D. Ariz. Nov. 7, 2023) (quotations omitted); *see also Chao v. Westside Drywall, Inc.*, 709 F.Supp.2d 1037, 1064 (D. Or. 2010), *as amended* (May 13, 2010) ("[T]he fact that the laborers are not supervised in detail at all times does not necessarily mean they are not 'employees.'"). Although CCP did not specify precisely how responsibilities were divided between Santiago and other cleaners, it is undisputed "his general duties were determined by [CCP]." *Eans*, 2023 WL 7327985, at *3; *see also Chao*, 709 F.Supp.2d at 1064 (finding defendants exercised control where they made all decisions about what materials were used for the project, which project sites work crews were assigned to, and "regularly visited the job sites to provide supervision and instruction").

CCP also argues it did not exercise the requisite level of control because Santiago sometimes refused work and could work for other companies. (Doc. 31 at 6; Doc. 31-1 at 2.) This fact supports CCP's position. *Ramos v. Probuilds LLC*, No. CV-23-01111-PHX-DMF, 2023 WL 8651038, at *4 (D. Ariz. Nov. 7, 2023), *report and recommendation adopted*, 2024 WL 169683 (D. Ariz. Jan. 16, 2024). But it is not determinative. *See Washington v. Freedom of Expression LLC*, No. CV-21-01318-PHX-MTL, 2024 WL 4455483, at *6 (D. Ariz. Oct. 9, 2024) (finding workers were employees even when they could work for other employers).

CCP also argues without supporting evidence that it did not train Santiago. (Doc. 31 at 6.) But as a manual worker, CCP's lack of training provides little basis to conclude Santiago was an independent contractor. *Baker v. Barnard Constr. Co., Inc.*,

860 F.Supp. 766, 771 (D.N.M. 1994) ("A laborer on a construction site, who is told where and when to dig, does not exhibit characteristics of an independent contractor if the company does not actually tell him how to use a shovel."), *aff'd sub nom. Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436 (10th Cir. 1998).

Finally, although the parties dispute who determined the payment terms, it is clear from the available facts that CCP was ultimately in control. *Romero v. Synergy Restoration LLC*, No. CV-24-01602-PHX-MTL, 2025 WL 33546, at *4 (D. Ariz. Jan. 6, 2025) (finding employer-employee relationship where employer "determined the rate and method of payment"). CCP required every worker to sign an agreement setting a "daily flat rate" of $150. (Doc. 31-1 at 2.) Santiago requested his daily rate be paid in cash, but CCP admits it did "not always" pay him daily for the work he completed. (Doc. 30-4 at 4.) CCP refused to admit or deny whether Santiago was paid for his work until CCP was paid for an overall project, noting it was "possible" and "job dependent" (Doc. 30-7 at 6), but Lautz sent Santiago text messages saying he would not be able to pay Santiago for his last project until CCP itself was paid. (Doc. 30-8 at 4–7.) Finally, CCP admitted it was unwilling to pay Santiago the agreed-upon rate for the work he completed on his final project because it believed Santiago's work was deficient. (Doc. 31-1 at 3.) *See Driscoll*, 603 F.2d at 756 (finding company's ability to "ultimately determine the amount" workers were paid was "[p]articularly significant[]" to concluding workers were employees). Based on the totality of the circumstances, the control factor cuts in Santiago's favor.

### b. Profit/Loss Opportunities

The second *Driscoll* factor assesses the employee's opportunity for profit or loss depending upon his managerial skill. *Driscoll*, 603 F.2d at 754. Here, Santiago did not exercise any managerial skill and only completed a "detailed construction clean" of areas CCP assigned him for a daily flat rate (Doc. 30-4 at 2). *See Monge v. DH Brewing Inc.*, No. CV-24-01294-PHX-MTL, 2025 WL 33541, at *5 (D. Ariz. Jan. 6, 2025) ("Payment of a fixed wage weighs in favor of employee status."). Although Santiago could decline

to work for CCP on a particular day, his "ability to increase [his] profits . . . [was] limited" because his "pay [was] capped by what [CCP was] willing to pay [him]." *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-CV-00824 JWS, 2015 WL 1299369, at *4 (D. Ariz. Mar. 23, 2015).

CCP misunderstands this factor, arguing Santiago could simply decline work from CCP to maximize his profits. (Doc. 31 at 6–7.) But this factor "focuses on the relationship between the alleged employer and the alleged employee," analyzing Santiago's opportunity to maximize profits through managerial skill as he performed work for CCP, not his freedom to work for other employers. *Freedom of Expression LLC*, 2024 WL 4455483, at *6 (finding argument "[p]laintiffs *could* have" taken other jobs "unpersuasive"). That Santiago "was able to have other jobs while working [for CCP] does not suggest that [he] had the opportunity for profit" in his relationship with CCP. *See Smith v. City of Phoenix*, No. 2:14-CV-0936-HRH, 2015 WL 6811660, at *4 (D. Ariz. Nov. 6, 2015) ("Employees may work for more than one employer without losing the protections afforded by the FLSA."). This factor weighs in Santiago's favor.

### c. Investment in Equipment or Materials

The third *Driscoll* factor evaluates an employee's investment in equipment or materials required for his task, or employment of helpers. *Driscoll*, 603 F.2d at 754. "In making a finding on this factor, it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation." *Dyrhaug v. Tax Breaks Inc.*, No. CV-13-01309-PHX-BSB, 2015 WL 13567067, at *8 (D. Ariz. Sept. 15, 2015) (quotations omitted). An employer's greater investment in equipment and materials compared to the employee's is "probative of the workers' economic dependence on the person who supplies the equipment or facilities." *Torres-Lopez v. May*, 111 F.3d 633, 641 (9th Cir. 1997).

CCP does not dispute it provided Santiago with all materials necessary for his work but claims doing so is "irrelevant" because Santiago did not "show[] up at a factory." (Doc. 31 at 7.) This factor is not limited to factory workers. *See, e.g.*, *Donovan*,

656 F.2d at 1372 (evaluating capital investment of dry-cleaning operators); *Freedom of Expression LLC*, 2024 WL 4455483, at *8 (analyzing capital investment of club dancers). This factor clearly weighs in favor of Santiago.

### d. Amount of Skill

The fourth *Driscoll* factor evaluates the level of "special skill" needed to perform the service rendered. *Driscoll*, 603 F.2d at 754. "A minimal level of skill weighs in favor of finding that an individual was an employee, rather than an independent contractor." *Dyrhaug*, 2015 WL 13567067, at *9. CCP argues without support that Santiago's work required "some skill" but claims this factor is "no more relevant in this context then [*sic*] in a landscaper or a house cleaner context." (Doc. 31 at 7.) Those workers, CCP argues, are "are generally independent contractors." (Doc. 31 at 7.)

On the contrary, this factor weighs in favor of Santiago. *Driscoll*, 603 F.2d at 755 (finding work "consist[ing] primarily of physical labor" did not require specialized skill); *see also Romero*, 2025 WL 33546, at *5 (finding no specialized skill where employee's work laying tile "consisted entirely of manual labor"); *Peralta v. Custom Image Pros LLC,* No. CV-23-00358-PHX-JAT, 2023 WL 8455120, at *3 (D. Ariz. Dec. 6, 2023) (same). Here, Santiago performed manual labor, "deep clean[ing]" construction sites. (Doc. 30-3 at 3.) And contrary to CCP's argument, landscapers and house cleaners are frequently classified as employees under the FLSA. *See, e.g.*, *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1078 (N.D. Ill. 2014) (finding maids were incorrectly classified as independent contractors); *Steen v. Maids in USA*, No. 3:23-CV-00072, 2023 WL 8260894, at *3 (S.D. Tex. Nov. 29, 2023), *report and recommendation adopted*, 2023 WL 8702171 (S.D. Tex. Dec. 15, 2023) (same); *De Luna-Lopez v. A Lawn & Landcare Servs. Co., LLC*, No. 3:11-CV-1782-M, 2013 WL 4504767, at *5 (N.D. Tex. July 29, 2013) (finding landscapers were employees under the FLSA).

This factor weighs in Santiago's favor.

### e. Duration of Employment

The fifth *Driscoll* factor assesses the permanence of the working relationship.

*Driscoll*, 603 F.2d at 754. "[T]rue independent contractors have a fixed employment period and generally offer their services to different employers." *Donovan*, 656 F.2d at 1372.

The parties dispute the duration of Santiago's employment with CCP. Santiago alleges he "performed jobs at multiple jobsites for [CCP] for at least two months, possibly four." (Doc. 30 at 9.) He further alleges, without support, that he maintained "an ongoing working relationship . . . as opposed to a one job or fixed duration employment" as a "full-time worker." (Doc. 30 at 9.)

Similarly without support, CCP claims their relationship was "never a permanent situation." (Doc. 31 at 8.) Santiago appears to have worked on a job-by-job basis. After receiving a text message from CCP, he could accept or decline work for a particular day and at least once declined to work for CCP because "he had other work on a particular day." (Doc. 30-4 at 4.) To the extent these facts have been proven, they cut against Santiago and this factor weighs in CCP's favor.

### f. Necessity of Services

The final *Driscoll* factor considers whether the worker's services were integral to the business. *Driscoll*, 603 F.2d at 754. CCP is a construction cleaning business and Santiago performed construction cleaning on its behalf. (Doc. 30-3 at 3.) CCP does not dispute this but only argues this factor alone "is not dispositive of whether an employee/employer relationship exists." (Doc. 31 at 8.) Because the parties agree Santiago provided services integral to CCP's business, this factor undisputedly weighs in Santiago's favor.

### g. Conclusion

Five of six *Driscoll* factors weigh in Santiago's favor. CCP controlled how Santiago's work was performed, Santiago did not have an opportunity for profit or loss depending upon his managerial skill, CCP provided Santiago all necessary materials, Santiago's work did not require special skill, and his services were integral to CCP's business. And although the factors are not determinative, the circumstances of the whole

1  of the relationship are more akin to employment than an independent contractor making
2  his own business decision to contract with CCP. Even viewing the facts in the light most
3  favorable to CCP, Santiago was an employee.

4  **IV.    Remaining Proceedings**

5  Having addressed Santiago's motion for partial summary judgment, the court
6  concludes referral to a magistrate judge for additional settlement discussions would be
7  beneficial.

8  Furthermore, the court will set a firm trial date. The parties must file a statement
9  identifying the expected length of trial and propose dates between July 8 through July 17,
10 2025 and October 28 through November 21, 2025 when all parties, counsel, and
11 witnesses are available for trial. Trials are conducted between Tuesdays and Fridays. The
12 court will then issue an order setting a firm trial date. That order will also set the dates for
13 the final pretrial conference and will contain (a) deadlines for motions in limine and
14 *Daubert* motions, (b) the form for the completion of the parties' joint proposed pretrial
15 order, and (c) instructions to the parties concerning their duties in preparing for the final
16 pretrial conference.

17 Accordingly,

18 **IT IS ORDERED** the Partial Motion for Summary Judgment (Doc. 30) is
19 **GRANTED**.

20 **IT IS FURTHER ORDERED** the Clerk of Court shall substitute defendant
21 "Unknown Jane Doe" with "Lisa M. Lautz."

22 **IT IS FURTHER ORDERED** this action is referred to Magistrate Judge Alison
23 S. Bachus to conduct a settlement conference. The parties are directed to jointly call
24 Magistrate Judge Bachus's chambers at (602) 322-7610 within 14 days to schedule a date
25 for the settlement conference.

26 /
27 /
28 /

**IT IS FURTHER ORDERED** no later than **May 8, 2025**, the parties shall file a statement proposing dates between July 8 through July 17, 2025 and October 28 through November 21, 2025 (excluding Mondays) when all parties, counsel, and witnesses are available for trial.

Dated this 1st day of May, 2025.

                                                    _____
                                                    Honorable Krissa M. Lanham
                                                    United States District Judge